## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| Minnesota Chamber of Commerce, *a Minnesota nonprofit corporation*,<br><br>Plaintiff,<br><br>vs.<br><br>John Choi, *in his official capacity as* County Attorney for Ramsey County, Minnesota; George Soule, *in his official capacity as* Chair of the Minnesota Campaign Finance and Public Disclosure Board; David Asp, *in his official capacity as* Vice Chair of the Minnesota Campaign Finance and Public Disclosure Board; Carol Flynn, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; Margaret Leppik, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; Stephen Swanson, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; and Faris Rashid, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 0:23-cv-02015<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.     This is an action for declaratory and injunctive relief challenging recently-enacted legislation that impermissibly infringes upon the First Amendment free speech

rights of domestically organized corporations and limited liability companies in Minnesota.

2.      Plaintiff Minnesota Chamber of Commerce (the "Chamber") is a nonprofit membership organization that receives membership funds and uses a portion of those funds to, *inter alia*, make contributions to its political action fund.

3.      The Chamber's members include both privately and publicly held for-profit corporation and limited liability companies that seek to (1) make  expenditures, or offer or agree to make expenditures, to promote or defeat the candidacies of individuals for nomination, election, or appointment to public office; (2) make contributions or expenditures to promote or defeat ballot questions, or to qualify questions for placement on ballots; and/or (3) make contributions to political committees or political funds.[1]

4.      The Chamber brings this civil action for declaratory and injunctive relief on behalf of itself and its members because, while these types of activities are speech protected by the First Amendment to the United States Constitution, as recognized by the United States Supreme Court in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), Minnesota has recently enacted legislation that unconstitutionally restricts and prohibits speech by corporations and limited liability companies who the Legislature has defined as "foreign influenced corporations." *See* Minn. Stat. § 211B.15, subds. 3(d) & 4a (2023).

---

[1] Specifically, the Chamber's members seek to make independent expenditures to independent expenditure political committees and independent expenditure political funds as previously allowed by Minnesota law.

5.      In *Citizens United*, the United States Supreme Court held that certain provisions of the Bipartisan Campaign Reform Act of 2002, as amended, which prohibited corporate independent expenditures, violated the First Amendment of the United States Constitution. The Supreme Court held that corporations possess First Amendment rights, including the right to petition legislative and administrative bodies. 558 U.S. at 341-43. Following *Citizens United*, the Minnesota Legislature added independent expenditure political committees and funds to the statutory framework. *See* Minn. Stat. § 10A.01, subds. 27-28 (2010). In 2013, the statutes were updated to include ballot question committees. *See* Minn. Stat. § 10A.01, subds. 7c-7d (2013).

6.      Similarly, in *First Nat. Bank of Bos. v. Bellotti*, the United States Supreme Court held that a Massachusetts law prohibiting corporations from making contributions or expenditures for the purpose of influencing a ballot question violated the First Amendment and was therefore unconstitutional. *See First Nat. Bank of Bos.,* 435 U.S. 765, 765 (1978).

7.      Minnesota has recently enacted legislation to amend Minnesota Statute section 211B to prohibit for-profit corporations and limited liability companies with a mere 1% single foreign investor owner, or 5% aggregate foreign investor ownership, from engaging in constitutionally protected speech, such as to (1) make expenditures, or offer or agree to make expenditures, to promote or defeat the candidacy of individuals for nomination, election, or appointment to public office; (2) make contributions or expenditures to promote or defeat ballot questions, or to qualify questions for placement on the ballot; and (3) make contributions to a political committees or political funds.

Minn. Stat. § 211B.15, subds. 3(d) & 4a (2023). These statutory amendments and the corresponding restrictions and prohibitions shall become effective January 1, 2024. *Id.*

8.     Violations of these statutory amendments and the corresponding restrictions and prohibitions may result in monetary fines, prosecution, incarceration, and potential dissolution of affected corporations and limited liability companies. *Id.* at subds. 6 & 7. County attorneys and the Campaign Finance and Public Disclosure Board ("CFPD Board") are authorized and expected to prosecute violations of these amendments to Minnesota Statute section 211B. *Id.* at § 211B.16, subd. 3; 211B.15, subds. 6, 7.

9.     A copy of these new Minnesota Statutes are attached hereto as Exhibit A.

10.     These statutory amendments and corresponding provisions of Minnesota Statute § 211B unconstitutionally prohibit and threaten prosecution of independent corporate political and free speech activities that the United States Supreme Court has held are protected by the First Amendment to the United States Constitution.

11.     The Minnesota Statutes prohibiting independent expenditures[2] apply to federal, as well as statewide, legislative, judicial, or local office, candidacies, which is in direct contradiction to federal law and regulations that govern expenditures in connection with federal elections and therefore preempted by federal law. *See* Minn. Stat. 211B.01, subd. 3 (2023).

---

[2] As used herein, "independent expenditures" includes expenditures to promote or defeat the candidacy of an individual, expenditures of contributions to promote or defeat a ballot question, electioneering communications, and contributions to a political committee, political fund, or ballot question committee.

12.     Minnesota's prohibitions on and sanctions for independent corporate expenditures by entities such as the Chamber and its members are unconstitutional and preempted by federal law, should be declared invalid, and enforcement should be permanently enjoined.

13.     Indeed, following the passage of these statutes, members of the CFPD Board, who are named as Defendants in their official capacities, explicitly questioned whether the law was well tailored, and they could not identify a basis to support the statutes' reach.

## JURISDICTION AND VENUE

14.     The Chamber asserts claims under 42 U.S.C. § 1983, 28 U.S.C. § 2201, and the Constitution and laws of the United States; and the Chamber seeks remedies pursuant to 42 U.S.C. §§ 1983, 1988, and 28 U.S.C. § 2201.

15.     Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Choi is a law enforcement officer within the State of Minnesota and resides within the District, and Defendants Soule, Asp, Flynn, Leppik, Swanson, and Rashid are members of the CFPD Board, which is a Minnesota state agency. These Defendants are tasked with enforcing the state statutes in question, and a substantial part of the events or omissions giving rise to the claims presented occurred within Ramsey County, which is in the Third Division of the District of Minnesota.

**PARTIES**

17.    Plaintiff Minnesota Chamber of Commerce is a nonprofit membership organization incorporated under the laws of the State of Minnesota. The Minnesota Chamber of Commerce's registered business address with the Minnesota Secretary of State is 380 Saint Peter Street, Suite 1050 St. Paul, Minnesota 55102.

18.    The Chamber is the largest organization representing businesses in Minnesota and is comprised of approximately 6,300 members, which include both privately and publicly held companies in every industry and throughout all of Minnesota.

19.    The Chamber leads the statewide business community to advance pro-business, responsible public policy that creates jobs and grows the economy, and provides member services to address evolving business needs. As part of this mission, the Chamber represents its members' interests through lobbying efforts, support of pro-business candidates, and advocacy of issues that impact its members. These efforts are carried out through various means, including through contributions towards political action funds.

20.    In alignment with the aforementioned mission, the Chamber alleges these claims to protect its own free speech rights, as well as those of its members.

21.    The protection of the free speech rights of the Chamber's members is germane to the purpose of the Chamber's organization which seeks to advocate and protect business issues that impact its members.

22.    Here, the Chamber is representing the interests of its members who are corporations and limited liability companies that seek to make independent expenditures

and contribute to ballot question political committees for various business reasons, but the recently enacted Minnesota legislation prohibits them from doing so.

23.     This prohibition on protected free speech rights affects a core business function—to participate and effect change in society. Businesses, as contributors and developers of society, appropriately seek to use their hard-earned influence and resources to make advancements in the community in which they participate. Taking issue with this restriction of rights is central to the Chamber's purpose.

24.     Defendant John Choi is the County Attorney for Ramsey County, Minnesota. Defendant Choi is sued in his official capacity as County Attorney who, as a County Attorney, is the person responsible under Minnesota Statutes section 211B.16, subd. 3 for enforcement of Minnesota Statutes sections 211B.15, subd. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023), in Ramsey County where the Minnesota Chamber of Commerce's business offices are located and where many of its members who are adversely affected by these unconstitutional and preempted prohibitions are headquartered and/or operate and engage in business.

25.     The CFPD Board is a Minnesota state agency empowered to audit, investigate, and enforce the relevant provisions of Chapter 10A and Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023), throughout the State, including by imposing civil penalties on persons and entities who violate Chapter 211B. *See* Minn. Stat. § 211B.15, subds. 6, 7 (2023). The CFPD Board is located in Ramsey County.

26.     Defendant George Soule is a member and current Chair of the CFPD Board, and is sued in his official capacity.

27.     Defendant David Asp is a member and current Vice Chair of the CFPD Board, and is sued in his official capacity.

28.     Defendant Carol Flynn is a member of the CFPD Board, and is sued in her official capacity.

29.     Defendant Margaret Leppik is a member of the CFPD Board, and is sued in her official capacity.

30.     Defendant Stephen Swanson is a member of the CFPD Board, and is sued in his official capacity.

31.     Defendant Faris Rashid is a member of the CFPD Board, and is sued in his official capacity.

32.     Collectively, Defendants Soule, Asp, Flynn, Leppik, Swanson, and Rashid are referred to herein as the "CFPD Defendants."

## STANDING AND RIPENESS

33.     An actual controversy exists between the parties, and the Chamber and its members have suffered and will continue to suffer an injury-in-fact that is directly traceable to Minnesota law and Defendants' duties to enforce that law and foreseeable actions taken in accordance with that duty.

34.     Specifically, the Chamber and its members who qualify or may qualify as "foreign influenced corporations" presently propose to prepare budgets and allocate assets that will be used to make independent expenditures and contribute to ballot

question committees, now and in the future, and to make those independent expenditures in 2024. These proposed activities are expressly prohibited by the challenged provisions of Minnesota Statutes Chapter 211B.

35.    The Chamber presently fears that Defendant Choi (and other County Attorneys so authorized under Minnesota Statutes section 211B.16, subd. 3) will initiate criminal prosecution against the Chamber, its members, and their corporate officers, employees, and agents for violations of the statutory prohibitions at issue.

36.    The Chamber also presently fears that the CFPD Defendants will initiate audits and investigations (and impose penalties based on the same) against the Chamber, its members, and their corporate officers, employees and agents for violations of the statutory prohibitions at issue.

37.    The Chamber and its members presently fear criminal prosecution for violations of the statutory prohibitions at issue, which results in members avoiding making certain speech, and thereby chilling their speech.

38.    The Minnesota statutes also require any corporation or limited liability company that makes an independent expenditure or contributes to a ballot question committee to submit a certification that it is not presently owned by 1% single or 5% aggregate foreign nationals under penalty of perjury, and the risk of severe monetary penalties, dissolution, and potential incarceration. Ownership percentages are subject to fluctuation, and it can be very difficult to accurately assess the status of ownership at any given time. In addition to this difficulty, an entity will need to conduct this analysis *every*

*time* it makes an independent expenditure.[3] The practical effect of this reality is that <u>all</u> corporations and limited liability companies will likely take steps to avoid making independent expenditures and thereby avoid exercising their free speech rights. This will result in impermissibly chilled speech. These circumstances and facts are causing and will cause actual injury to the Chamber and its members, including the chilling of their First Amendment constitutional rights, which is directly caused by the Minnesota statutes at issue.

39.     A favorable decision of this Court will redress the Chamber's and its members' respective injuries by allowing them to engage in activities expressly permitted under the United States Constitution that are nonetheless prohibited by said Minnesota statutes.

40.     In order to maintain a proper level of respect for State law, while ensuring protection against unconstitutional prohibitions on its members' rights of free speech and unlawful prosecutions, the Chamber seeks declaratory and injunctive relief here against Defendants, who are authorized with the power, and duty bound, to enforce these statutes against the Chamber and its members.

41.     The Chamber, which consists of thousands of members, has associational standing because the statute at issue poses an impediment to its activities and mission.

---

[3] The Star Tribune reported in February 2023 that over $42MM was spent on independent expenditures in the 2022 midterm election cycle. Briana Bierschbach, *Minnesota Democrats Push for More Reporting on Outside Money in Elections*, Star Tribune, (Feb. 17, 2023), https://www.startribune.com/minnesota-democrats-push-for-more-reporting-on-outside-money-in-elections/600252444/.

*Rukavina v. Pawlenty*, 684 N.W.2d 525, 533 (Minn. Ct. App. 2004). It is the stated purpose of the Chamber to advocate for its members' rights and interests, and that includes their free speech rights. Over 100 of the Chamber's members are corporations and limited liability companies who the Minnesota Legislature has now defined as "foreign influenced corporations" or who do not have the ability to certify that they are not "foreign influenced corporations" and therefore will suffer injury by having to comply with the statutes and thereby be forced to self-censor and sacrifice their First Amendment rights or risk criminal protection. Hundreds more of the Chamber's members could easily become "foreign influenced corporations" at any point when there are ownership changes, in many cases outside the members' control.

42.     The Chamber has standing to bring this action on behalf of its members and this matter is ripe for judicial review in accordance with the Eighth Circuit's holding in *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481 (8th Cir. 2006).

**HARM TO CHAMBER MEMBERS**

43.     The Chamber is a nonprofit membership organization incorporated under Minnesota law. Membership in this organization is open to persons, associations, corporations or partnerships who subscribe to the Chamber's mission statements and objectives, pay annual dues, and are accepted as members.

44.     At least 100 of the Chamber's members are corporations and limited liability companies who the Minnesota Legislature has now defined as "foreign influenced corporations" or who do not have the ability to certify that they are not "foreign influenced corporations," and are therefore prohibited from making independent

11

expenditures on or after January 1, 2024. The members reflected in this total include privately owned and publicly held companies.[4]

45. Some of the Chamber's members propose to engage in certain corporate independent expenditures, which the United States Supreme Court has held to be protected by the First Amendment of the United States Constitution, in support of, or in opposition to, candidates for political office and ballot questions. These proposed corporate independent expenditures would include, among other things:

    a. Taking out print, television, or internet advertisements which support or oppose candidates or ballot questions;

    b. Placing endorsements of candidates or statements of support or opposition to ballot questions;[5]

    c. Renting advertisement space on a billboard;

---

[4] This is not an exhaustive estimate of the corporations and limited liability companies that are currently or will be affected by these Minnesota statutes. In 2022, the Minnesota Department of Employment and Economic Development identified over 900 Minnesota entities that are "foreign owned." *Foreign-Owned Businesses in Minnesota*, Minn. Dep't Employment & Economic Development, https://mn.gov/deed/joinusmn/why-mn/our-economy/foreign-owned/ (last visited June 28, 2023). Importantly, these Minnesota Statutes will ensnare many other companies who do not even come close to reaching DEED's definition of "foreign owned."

[5] For example, in the upcoming 2024 Minnesota election, the dedication of 50% of lottery proceeds to the Environmental and Natural Resources Trust Fund will be a ballot question. MN LEGIS 67 (2023), 2023 Minn. Sess. Law Serv. Ch. 67 (H.F. 1900). Numerous other ballot questions have appeared on statewide Minnesota elections alongside ballot questions specific to municipality elections in recent years.

d. Sending letters to local businesses informing them of endorsements or opposition to specific candidates and encouraging members to support or oppose certain candidates for political office or ballot questions;

e. Holding rallies which may include statements of support or opposition to specific candidates or ballot questions;

f. Participating in phone bank efforts to encourage people to vote for or against a particular candidate for office or ballot question; and

g. Making contributions to independent expenditure political committees.

46.     Minnesota law expressly prohibits corporations and limited liability companies, including domestically organized and domestically head-quartered entities that are majority-owned (and therefore controlled) by United States citizens, that the Minnesota Legislature nonetheless defines as "foreign influenced corporations" from engaging in independent expenditures, notwithstanding the express rulings by the United States Supreme Court that these activities are political speech protected by the First Amendment.

47.     Minnesota Statutes section 211B.15, subd. 1(d) (2023) defines a "foreign influenced corporation" as any for-profit corporation or any limited liability company "for which any of the following conditions is met":

(1)     a single foreign investor holds, owns, controls, or otherwise has direct or indirect beneficial ownership of *one percent* or more of the total equity, outstanding voting shares, membership units, or other applicable ownership interests of the corporation;

     (2)     two or more foreign investors in aggregate hold, own, control, or otherwise have direct or indirect beneficial ownership of *five percent* or more of the total equity, outstanding voting shares, membership units, or other applicable ownership interests of the corporation; or

     (3)     a foreign investor participates directly or indirectly in the corporation's decision-making process with respect to the corporation's political activities in the United States. (emphasis added).

48.    In addition to the facial invalidity of this statute through its violation of the First Amendment free speech rights of corporations, the statute is also vastly overbroad and not narrowly tailored because of the de minimis 1% and 5% thresholds which do not facially reflect control over the actions of corporations or LLCs.

49.    Aside from the unconstitutionality of subdivisions 1 and 2 above regarding percent ownership, subdivision 3 is unconstitutionally vague because it does not define or explain what is (or is not) meant by participating in a corporation's decision-making process and therefore will result in the chilling of free speech as entities refrain from speaking out of fear of violating these statutes.

50.    In addition, the definition of "foreign influenced corporation" does not include labor unions and other business organizations other than for-profit corporations or LLCs, and, further, imposes greater hardships on publicly-traded entities as compared to privately-held entities that have greater visibility to their ownership, and is therefore an unequal application and violation of the First Amendment.

51.    During the Senate hearing on these statutes, an amendment was proposed to include labor unions in the definition of a foreign influenced corporation. The

amendment did not pass; as a result, labor unions are not included in the language of the statutes. Minnesota Senate Journal, 2023 Reg. Sess. No. 57.

52.    Under the statutes in question, labor unions are free to exercise their free speech rights without regard to foreign influence (such as through dues-paying members or chapters).

53.    Minnesota Statutes section 211B.01, subd. 1(e) (2023) defines a "foreign investor" as:

> a person or entity that:
>
> (1) holds, owns, controls, or otherwise has direct or indirect beneficial ownership of equity, outstanding voting shares, membership units, or otherwise applicable ownership interests of a corporation; and
>
> (2) is any of the following:
>
> > (i)    a government of a foreign country;
> >
> > (ii)   a political party organized in a foreign country;
> >
> > (iii)  a partnership, association, corporation, organization, or other combination of persons organized under the laws of or having its principal place of business in a foreign country;
> >
> > (iv)   an individual outside of the United States who is not a citizen or national of the United States and who is not lawfully admitted for permanent residence in the United States; or
> >
> > (v)    a corporation in which a foreign investor as defined in items (i) to (iv) holds, owns, controls, or otherwise has directly or indirectly acquired beneficial ownership of equity or voting shares in an amount that is equal to or greater than 50

> percent of the total equity or outstanding voting
> shares.

54. Minnesota Statutes section 211B.01, subd. 3 (2023) defines "Candidate" as:

> an individual who seeks nomination or election to a
> federal, statewide, Metropolitan Council, legislative,
> judicial, or local office including special districts,
> school districts, towns, home rule charter and statutory
> cities, and counties, except candidates for president
> and vice-president of the United States.

55. Minnesota Statutes section 211B.15, subd. 4a (2023) provides that:

> (a) . . . a foreign-influenced corporation must not:
>
> > (1) make an expenditure, or offer or agree to make an
> > expenditure, to promote or defeat the candidacy of an
> > individual for nomination, election, or appointment to a
> > public office;
> >
> > (2) make contributions or expenditures to promote or defeat a
> > ballot question, or to qualify a question for placement on
> > the ballot;
> >
> > (3) make a contribution to a candidate for nomination,
> > election, or appointment to a public office or to a
> > candidate's principal campaign committee; or
> >
> > (4) make a contribution to a political committee, political
> > fund, or political party unit.
>
> (b) A foreign-influenced corporation must not make a contribution
> or donation to any other person or entity with the express or
> implied condition that the contribution or donation or any part of
> it be used for any of the purposes prohibited by this subdivision.
> This section does not prohibit donations to any association for its
> general purposes such that the funds qualify as general treasury
> money pursuant to section 10A.01, subdivision 17c, nor does it
> impose any additional limitations on the use of such funds.

56.     While Chapter 211B does not define "political committee," Minnesota Statutes section 10A.01, subd. 27 defines political committee as "an association whose major purpose is to influence the nomination or election of one or more candidates or local candidates or to promote or defeat a ballot question, other than a principal campaign committee, local candidate, or a political party unit."

57.     Prior to the recent enactment of these Minnesota statutes, corporations and limited liability companies were permitted to contribute funds to independent expenditure political committees and ballot question committees (10A.121; 211B.15, subds. 3-4); but the new statutes do not provide an exception for these committees; and, therefore, given the broad definition of "political committee" in 10A and as used in 211B.15, the Legislature has barred the exercise of free speech that had been available through these methods.

58.     Likewise, in order to make independent expenditures, corporations and limited liability companies had to establish independent expenditure political funds; but such independent expenditure political funds have also been subsumed in the definition of "political fund" in 211B.15. Therefore, independent expenditure political funds are no longer an option for corporations or limited liability companies.

59.     Minnesota Statutes section 10A.20 requires that all independent expenditures be reported to the Minnesota Campaign Finance and Public Disclosure Board through the submission of periodic campaign finance reports.

60.     These reports have required an affirmative statement certified under oath and subject to criminal penalty that the disclosed expenditures were not made "with the

authorization or expressed or implied consent of, or in cooperation or in concert with, or at the request or suggestion of any candidate; any candidate's principal campaign committee or agent; any local candidate, or any local candidate's agent." Minn. Stat. § 10A.20, subd. 6a.

61.     The recently enacted Minnesota Statutes section 211B.15, subd. 4b (2023) now requires an additional certification by any "corporation" that makes a contribution or expenditure to:

> submit a certification to the Campaign Finance and Public Disclosure Board that it was not a foreign-influenced corporation as of the date the contribution or expenditure was made. The certification must be submitted within seven business days after the contribution or expenditure is made and must be signed by the corporation's chief executive officer after reasonable inquiry, under penalty of perjury. If the activity requiring certification was a contribution to an independent expenditure committee, the corporation must additionally provide a copy of the certification to that committee. For purposes of this certification, the corporation shall ascertain beneficial ownership in a manner consistent with chapter 302A or, if it is registered on a national securities exchange, as set forth in Code of Federal Regulations, title 17, sections 240.13d-3 and 240.13d-5. The corporation shall provide a copy of the statement of certification to any candidate or committee to which it contributes, and upon request of the recipient, to any other person to which it contributes.

62.     Minnesota Statutes section 211B.15, subd. 1(c) (2023) defines a "corporation" to include, *inter alia,* a "nonprofit corporation that carries out activities in this state," which includes the Chamber and many of its members.

63.     This additional certification, required to be made under oath and subject to criminal penalty, that a corporation or limited liability company is not a "foreign

influenced corporation," is required within seven (7) business days following any independent expenditure. This certification requirement imposes an additional and unreasonable burden on Minnesota corporations and limited liability companies because ownership of entities—particularly public companies, but also privately-held entities—is constantly fluctuating and it can be very difficult to assess with sufficient precision to accurately certify the status of ownership at any given time. Plus, many companies may not know the nationality or immigration status of their shareholders. In addition to these difficulties, an entity will need to conduct this analysis in order to make the required certification *every time* it makes an independent expenditure. The practical effect of this requirement is that all corporations and limited liability companies may and very likely will self-censor and avoid making independent expenditures at all to avoid the risk of prosecution, which chills constitutionally protected speech.

64.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) shall take effect on January 1, 2024. Accordingly, as the Chamber and its members are currently making decisions regarding their budgets and fiscal planning for the coming year, they are forced to take into account the adverse impact this statute will have on their ability to make independent expenditures.

65.    Under applicable prosecution and penalty provisions, corporations such as the Chamber's members may be fined up to $40,000 and/or be dissolved for violation of these Minnesota laws. Individuals acting on behalf of corporations, such as executives of the Chamber's members, may be fined not more than $20,000 or be imprisoned for not more than five years, or both, for violation of these Minnesota laws. Minn. Stat.

§ 211B.15, subd. 6 (2023). The Chamber's members who are presently preparing budgets and allocating assets that will be used to make independent expenditures and contribute to ballot question committees, now and in the future, and to make those independent expenditures in 2024, are fearful of facing the threat of prosecution for engaging in these types of activities on or after January 1, 2024, because, while protected by the First Amendment and recognized as allowed by the United States Supreme Court in its decision in *Citizens United*, such activities and expenditures by "foreign influenced corporations" are expressly prohibited by Minnesota Statutes section 211B.15, subd. 4a, and the Chamber's members fear prosecution and penalties under Minnesota Statutes section 211B.15, subds. 6 and 7 (2023) for violations.

66.     As a result of this fear, the Chamber's members will avoid engaging in certain political speech. This not only harms the Chamber's members, but also infringes on the rights of listeners to hear "what every possible speaker may have to say." *Citizens United*, 558 U.S. at 469.

67.     The Chamber's members speech is also chilled by the requirement that a corporation or limited liability company submit a certification that it is not presently owned by 1% single or 5% aggregate foreign nationals every time that it makes an independent expenditure. Ownership percentages are constantly fluctuating, and it can be very difficult to assess with perfect accuracy the status of ownership at any given time. In addition to this difficulty, an entity will need to conduct this analysis *every time* it makes an independent expenditure. The practical effect of this requirement is that all corporations and limited liability companies may take steps to avoid making independent

expenditures and contributing to ballot question committees, and thereby avoid exercising their free speech rights.

68.     Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are also unconstitutional because they are vastly overbroad through the definition of "foreign-influenced corporations" at the low threshold of 1% or 5%.

69.     Portions of the above-referenced sections of Minnesota statutes are also preempted by the Federal Election Campaign Act ("FECA"), as well as federal regulations promulgated thereunder. For instance, FECA, as amended, already regulates spending by foreign nationals in connection with federal, state, and local elections. 452 U.S.C. § 30121(a)(1). FECA also allows corporations, including those that meet the definition of foreign influenced under Minnesota law, to make independent expenditures and electioneering communications in connection with federal elections. 11 CFR § 114.10.

70.     Minnesota Statutes section 211B.01, subd. 3 defines "candidate" to include those seeking federal office.

71.     FECA expressly provides that it shall "supersede and preempt any provision of state law with respect to election of federal office." 52 U.S.C.A § 30143.

72.     Federal rules promulgated by the Federal Election Commission ("FEC") pursuant to FECA likewise provide that "federal law supersedes state law concerning the limitations on contributions and expenditures regarding federal candidates and political committees." 11 C.F.R. § 108.7(b)(3).

73.     The above-referenced sections of Minnesota Statutes are unconstitutional and preempted by federal law and should be declared invalid, and their enforcement should be enjoined.

74.     This Court has already held similar legislation prohibiting independent expenditures as unconstitutional. In *Minnesota Chamber of Com. v. Gaertner*, the Court held "[t]he Supreme Court's decision in <u>Citizens United</u> is unequivocal: the government may not prohibit independent and indirect corporate expenditures on political speech." 710 F. Supp. 2d 868, 873 (D. Minn. 2010) (Court granted declaratory judgment and permanent injunctive relief).

## HARM TO THE CHAMBER

75.     The Chamber also brings this Complaint on behalf of itself. The Chamber receives membership dues from its members.

76.     The Chamber utilizes part of these membership dues to contribute towards an independent expenditure political action fund called the Pro Majority Jobs Fund as permitted by Minnesota Statutes section 10A.12.

77.     Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) impose an absolute ban on corporate independent expenditures from "foreign influenced corporations." Under these statutes, the Chamber cannot be defined as a "foreign influenced corporation" because it is an association with no owners.

78.     Minnesota Statutes section 211B.15, subd. 1(d) (2023) states:

> A foreign-influenced corporation must not make a contribution or donation to any other person or entity with the express or implied condition that the contribution or donation or any part of it be used

for any of the purposes prohibited by this subdivision. **This section does not prohibit donations to any association for its general purposes such that the funds qualify as general treasury money** pursuant to section 10A.01, subdivision 17c, nor does it impose any additional limitations on the use of such funds.

79.    Minnesota Statutes sections 10A.01, subd. 17c states:

"General treasury money" means money that an association other than a principal campaign committee, party unit, or political committee accumulates through membership dues and fees, donations to the association for its general purposes, and income from the operation of a business. **General treasury money does not include money collected to influence the nomination or election of candidates or local candidates or to promote or defeat a ballot question.**

80.    On June 7, 2023, the CFPD Board published its "review of changes to campaign finance and public disclosure laws."  In regards to the above referenced section, the CFPD Board stated the "section does not prohibit donations by a foreign-influenced corporation to an association's general treasury money for its general purposes that *are not election related*."[6] (Emphasis added.)

81.    As a result of these statutes, the Chamber is prohibited from using its general treasury money, which includes membership dues, for the purpose of making contributions to its political action fund or to a ballot question committee if that money originates from a "foreign influenced corporation."

82.    To comply with these statutes, the Chamber would need to make sure that it identifies which of its members are "foreign influenced," segregate those funds in a separate account and then certify that it is not using any funds collected from a foreign

influenced corporation every time that it makes a contribution. As discussed, many companies are not able to decipher whether their shareholders are foreign nationals, nor is it clear whether this would need to be determined at the time that membership dues are paid or at the time that the Chamber uses those funds to make a contribution to its political action committee or to a ballot question committee. Consequently, the Chamber is forced to take steps to avoid making independent expenditures and contributions, chilling its right to free political speech.

83.    These actions are an important function of the Chamber. The Campaign Finance Board's website reports that the Chamber's independent expenditure political action fund (Pro Jobs) spent just over $1 million and made approximately 50 independent expenditures between July 15 and election day 2022. The Chamber's continued spending in this regard is now in substantial jeopardy.

84.    For the same reasons alleged above, these statutes are unconstitutional because they violate the First Amendment, and they are preempted by federal law.

## COUNT I

### (Declaratory Relief for Violation of the First Amendment on Behalf of Chamber Members)

85.    The Chamber, on behalf of its members, realleges all of the paragraphs of this Complaint as if fully set forth herein.

---

[6] Minutes of the June 7, 2023, Campaign Finance and Public Disclosure Board Meeting, CFPD Board (June 7, 2023), *available at* https://cfb.mn.gov/citizen-resources/the-board/meetings/agendas/.

86.     Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) impose an absolute ban on corporate independent expenditures and contributions to ballot question committees from "foreign influenced corporations." Minnesota law provides for criminal sanctions in the event of any violation of these prohibitions. The Chamber's members include entities that are now defined to be "foreign influenced corporations" under the statutes—even though those entities are in no way subject to "foreign influence." The Chamber's members seek to engage in the speech prohibited by these statutes, which has been deemed to be protected speech under the First Amendment of the United States Constitution by the United States Supreme Court in *Citizens United,* but fear penalty and prosecution by Defendants if they do so.

87.     The First Amendment to the United States Constitution provides that "Congress shall make no law…abridging freedom of speech." U.S. Const. amend. I.

88.     The First Amendment to the United States Constitution applies to Defendants by reason of the Fourteenth Amendment to the United States Constitution, which provides that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

89.     Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they prohibit entities organized under federal or state law from exercising their free speech rights.

90.     Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they treat entities owned by a 1% single or 5% aggregate foreign nationals as entities that are foreign controlled, when, in fact, those percentages evidence a lack of such control.

91.     Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they are not narrowly tailored to further a compelling government interest and in fact are vastly overbroad.

92.     Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, 4b (2023) are also unconstitutional as applied to the Chamber and its members.

93.     The Chamber's members are entitled to a declaration that Minnesota statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) violate the First Amendment to the United States Constitution and, therefore, are unconstitutional. 28 U.S.C. § 2201, 42 U.S.C. § 1983.

94.     The Chamber's members are entitled to a declaration that Minnesota Statutes section 211B.16, subd. 3, shall not and will not be deemed to authorize County Attorneys such as Defendant Choi to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b. *See* 28 U.S.C. § 2201; 42 U.S.C. § 1983; *Ex Parte Young*, 209 U.S. 123 (1908).

95.     The Chamber's members are further entitled to a declaration that Minnesota Statutes sections 10A.022 and 211B.16, subds. 6 and 7 shall not and will not be deemed to authorize the CFPB Defendants to enforce Minnesota Statutes sections 211B.15,

subds. 1 (a), (b), (c), (d), (e), 4a, and 4b. *See* 28 U.S.C. § 2201; 42 U.S.C. § 1983; *Ex Parte Young*, 209 U.S. 123 (1908).

96.    The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

## COUNT II

### (Injunctive Relief for Violation of the First Amendment on Behalf of Chamber Members)

97.    The Chamber, on behalf of its members, realleges all of the paragraphs of this Complaint as if fully set forth herein.

98.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) impose an absolute ban on corporate independent expenditures and contributions to ballot question committees from "foreign influenced corporations." Minnesota law provides for criminal sanctions in the event of any violation of these prohibitions.

99.    The Chamber's members include at least 100 corporations and limited liability companies who the Minnesota Legislature has now defined as "foreign influenced corporations" that are therefore prohibited from making independent expenditures and contributions to ballot question committees on or after January 1, 2024 under the statutes.

100.    The Chamber's members seek to engage in the speech prohibited of them by these statutes, which has been deemed to be protected speech under the First Amendment of the United States Constitution by the United States Supreme Court in

*Citizens United,* but fear penalty and prosecution by Defendants if they exercise their constitutional rights in a manner that violates these state statutes.

101.   Defendants' actions are likely and foreseeable and will be committed under color of state law.

102.   As a result of this fear, the Chamber's members will avoid engaging in certain speech which has the direct result of chilling their speech.

103.   The First Amendment to the United States Constitution provides that "Congress shall make no law…abridging freedom of speech." U.S. Const. amend. I.

104.   The First Amendment to the United States Constitution applies to Defendants by reason of the Fourteenth Amendment to the United States Constitution, which provides that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

105.   Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they prohibit entities organized under federal or state law from exercising their free speech rights.

106.   Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they treat entities owned by a 1% single or 5% aggregate foreign nationals as entities that are foreign controlled, when, in fact, those percentages evidence a lack of such control.

107.  Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they are not narrowly tailored to further a compelling government interest and in fact are vastly overbroad.

108.  Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, 4b (2023) are also unconstitutional as applied to the Chamber and its members.

109.  Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are unconstitutional and Defendants should not be permitted to enforce and prosecute these unconstitutional statutes.

110.  The Chamber is highly likely to prevail on the merits of this action.

111.  The Chamber's members will suffer irreparable harm to their First Amendment rights if Defendants are not enjoined from enforcing these unconstitutional prohibitions on speech.

112.  Defendants will not suffer any harm if they are prevented from enforcing these Minnesota statutes, which are unconstitutional.

113.  The public interest will clearly be served by granting the Chamber's request for injunctive relief.

114.  Accordingly, the Chamber is entitled to preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 1983 and *Ex Parte Young* prohibiting Defendants from enforcing the unconstitutional provisions of Minnesota law.

115.  The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

## COUNT III

### (Declaratory Relief for Violation of the Supremacy Clause
### on Behalf of Chamber Members)

116.    The Chamber, on behalf of its members, realleges all of the paragraphs of this Complaint as if fully set forth herein.

117.    The United States Constitution provides, "This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

118.    Congress enacted FECA, which expressly provides that it shall "supersede and preempt any provision of state law with respect to election of federal office." 52 U.S.C.A § 30143.

119.    FECA, in turn, authorized the Federal Election Commission ("FEC") to promulgate regulations.

120.    The FEC has promulgated regulations that "federal law supersedes state law concerning the limitations on contributions and expenditures regarding federal candidates and political committees." 11 C.F.R. § 108.7(b)(3).

121.    FECA already regulates spending by foreign nationals in connection with federal, state, and local elections. 452 U.S.C. § 30121(a)(1). Specifically, the FEC allows corporations, including those that meet the definition of foreign influenced under

Minnesota law, to make independent expenditures in connection with federal elections. 11 CFR § 114.10.

122.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 seek to regulate the use of independent expenditures by corporations for the election of federal candidates, which conflicts with the FECA and the FEC regulations that "supersede and preempt any provision of State law with respect to election to Federal office." 52 U.S.C.A § 30143, *see also* 11 C.F.R. § 108.7(b)(3).

123.    The Chamber's members are entitled to a declaration that Minnesota statutes sections 211B.15, subd. 1 (a), (b), (c), (d), (e), subds. 4a, subd. 4b, and 211B.01, subd. 3 are preempted under the Supremacy Clause.

124.    The Chamber's members are entitled to a declaration that Minnesota Statutes section 211B.16, subd. 3, shall not and will not be deemed to authorize County Attorneys such as Defendant Choi to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, and subd. 4b. *See* 28 U.S.C. § 2201.

125.    The Chamber's members are further entitled to a declaration that Minnesota Statutes sections 10A.022 and 211B.15, subds. 6 and 7 shall not and will not be deemed to authorize the CFPB Defendants to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b. *See* 28 U.S.C. § 2201.

126.    The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

## COUNT IV

### (Injunctive Relief for Violation of the Supremacy Clause
### on Behalf of Chamber Members)

127.     The Chamber, on behalf of its members, realleges all of the paragraphs of this Complaint as if fully set forth herein.

128.     The United States Constitution provides, "This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

129.     Congress enacted FECA, which expressly provides that it shall "supersede and preempt any provision of state law with respect to election of federal office." 52 U.S.C.A § 30143.

130.     FECA, in turn, authorized the Federal Election Commission ("FEC") to promulgate regulations.

131.     The FEC has promulgated regulations that "federal law supersedes state law concerning the limitations on contributions and expenditures regarding federal candidates and political committees." 11 C.F.R. § 108.7(b)(3).

132.     FECA already regulates spending by foreign nationals in connection with federal, state, and local elections. 452 U.S.C. § 30121(a)(1). Specifically, the FEC allows corporations, including those that meet the definition of foreign influenced under

Minnesota law, to make independent expenditures in connection with federal elections. 11 CFR § 114.10.

133.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 seek to regulate the use of independent expenditures by corporations for the election of federal candidates, which conflicts with the FECA and the FEC regulations that "supersede and preempt any provision of State law with respect to election to Federal office." 52 U.S.C.A § 30143, *see also* 11 C.F.R. § 108.7(b)(3).

134.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 are preempted and should therefore be stricken as unconstitutional under the Supremacy Clause.

135.    Because Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 are preempted, Defendants should not be permitted to enforce and prosecute these unconstitutional statutes.

136.    The Chamber is highly likely to prevail on the merits of this action.

137.    The Chamber's members will suffer irreparable harm if Defendants are not enjoined from enforcing these unconstitutional prohibitions.

138.    Defendants will not suffer any harm if they are prevented from enforcing these Minnesota statutes, which are unconstitutional.

139.    The public interest will clearly be served by granting the Chamber's request for injunctive relief.

140.  Accordingly, the Chamber's members are entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the unconstitutional provisions of Minnesota law. *See* 42 U.S.C. § 1983.

141.  The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

**COUNT V**

**(Declaratory Relief for Violation of the First Amendment
on Behalf of the Chamber)**

142.  The Chamber realleges all of the paragraphs of this Complaint as if fully set forth herein.

143.  Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) impose an absolute ban on corporate independent expenditures and contributions to ballot question committees from "foreign influenced corporations." Minnesota law provides for criminal sanctions in the event of any violation of these prohibitions. The Chamber's members include those considered "foreign influenced corporations" under the statutes.

144.  The Chamber seeks to use its members' funds to make contributions to its political action fund. Pursuant to these statutes, the Chamber is not allowed to use funds from its members that would be considered "foreign influenced corporations" or who cannot certify that they are not foreign influenced for the purpose of making contributions.

145.    The Chamber wishes to engage in the speech prohibited of them by these statutes, which has been deemed to be protected speech under the First Amendment of the United States Constitution by the United States Supreme Court in *Citizens United,* but fear penalty and prosecution by Defendants if it does so.

146.    The First Amendment to the United States Constitution provides that "Congress shall make no law…abridging freedom of speech." U.S. Const. amend. I.

147.    The First Amendment to the United States Constitution applies to Defendants by reason of the Fourteenth Amendment to the United States Constitution, which provides that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

148.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they prohibit entities organized under federal or state law from exercising their free speech rights.

149.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they treat entities owned by a 1% single or 5% aggregate foreign nationals as entities that are foreign controlled, when, in fact, those percentages evidence a lack of such control.

150.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) are facially unconstitutional because they are not narrowly tailored to further a compelling government interest and in fact are vastly overbroad.

151.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, 4b (2023) are also unconstitutional as applied to the Chamber.

152.    The Chamber is entitled to a declaration that Minnesota statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) violate the First Amendment to the United States Constitution and, therefore, are unconstitutional. *See* 28 U.S.C. § 2201, 42 U.S.C. § 1983.

153.    The Chamber is entitled to a declaration that Minnesota Statutes section 211B.16, subd. 3, shall not and will not be deemed to authorize County Attorneys such as Defendant Choi to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b. *See* 28 U.S.C. § 2201; 42 U.S.C. § 1983; *Ex Parte Young*, 209 U.S. 123 (1908).

154.    The Chamber is further entitled to a declaration that Minnesota Statutes sections 10A.022 and 211B.15, subds. 6 and 7 shall not and will not be deemed to authorize the CFPB Board to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b. *See* 28 U.S.C. § 2201; 42 U.S.C. § 1983; *Ex Parte Young*, 209 U.S. 123 (1908).

155.    The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

## COUNT VI

### (Injunctive Relief for Violation of the First Amendment
### on Behalf of the Chamber)

156.    The Chamber realleges all of the paragraphs of this Complaint as if fully set forth herein.

157.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b (2023) impose an absolute ban on corporate independent expenditures and contributions to ballot question committees from "foreign influenced corporations." Minnesota law provides for criminal sanctions in the event of any violation of these prohibitions.

158.    The Chamber's members include at least 100 corporations and limited liability companies who the Minnesota Legislature has now defined as "foreign influenced corporations" that are therefore prohibited from making independent expenditures and contributions to ballot question committees on or after January 1, 2024 under the statutes.

159.    The Chamber seeks to engage in the speech prohibited by these statutes, which has been deemed to be protected speech under the First Amendment of the United States Constitution by the United States Supreme Court in *Citizens United,* but fear penalty and prosecution by Defendants if it exercises its constitutional rights in a manner that violates these state statutes.

160.    Defendants' actions are likely and foreseeable and will be committed under color of state law.

161.    As a result of this fear, the Chamber will avoid making certain speech which has the direct result of chilling their speech.

162.    The Chamber's speech is also chilled by the requirement that the Chamber segregate its members' funds and certify that none of its contributions or independent expenditures include funds from foreign influenced corporations. This would require the Chamber to undertake the task of inquiring about shareholder percentages from every one of its members, some of who may not be able to garner this information. In addition to this difficulty, the Chamber will need to conduct this analysis *every time* it makes an independent expenditure. The practical effect of this requirement is that the Chamber is taking steps to avoid making independent expenditures and contributions.

163.    The Chamber's ability to engage in free speech is also limited by these statutes because it will have less funding to use in support of contributions and independent expenditures. The Chamber's members likewise are unable to participate in these kinds of speech through their membership with the Chamber, which further burdens their free speech rights.

164.    The First Amendment to the United States Constitution provides that "Congress shall make no law…abridging freedom of speech." U.S. Const. amend. I.

165.    The First Amendment to the United States Constitution applies to Defendants by reason of the Fourteenth Amendment to the United States Constitution, which provides that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or

property, without due process of law; nor deny to any person
within its jurisdiction the equal protection of the laws.

166.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and

4b (2023) are facially unconstitutional because they prohibit entities organized under

federal or state law from exercising their free speech rights.

167.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and

4b (2023) are facially unconstitutional because they treat entities owned by a 1% single

or 5% aggregate foreign nationals as entities that are foreign controlled, when, in fact,

those percentages evidence a lack of such control.

168.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and

4b (2023) are facially unconstitutional because they are not narrowly tailored to further a

compelling government interest and in fact are vastly overbroad.

169.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, 4b

(2023) are also unconstitutional as applied to the Chamber.

170.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and

4b (2023) are unconstitutional and Defendants should not be permitted to enforce and

prosecute these unconstitutional statutes.

171.    The Chamber is highly likely to prevail on the merits of this action.

172.    The Chamber will suffer irreparable harm to its First Amendment rights if

Defendants are not enjoined from enforcing these unconstitutional prohibitions on

speech.

173. Defendants will not suffer any harm if they are prevented from enforcing these Minnesota statutes, which are unconstitutional.

174. The public interest will clearly be served by granting the Chamber's request for injunctive relief.

175. Accordingly, the Chamber is entitled to preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 1983 and *Ex Parte Young* prohibiting Defendants from enforcing the unconstitutional provisions of Minnesota law.

176. The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

## COUNT VII

### (Declaratory Relief for Violation of the Supremacy Clause on Behalf of the Chamber)

177. The Chamber realleges all of the paragraphs of this Complaint as if fully set forth herein.

178. The United States Constitution provides, "This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

179.    Congress enacted FECA, which expressly provides that it shall "supersede and preempt any provision of state law with respect to election of federal office." 52 U.S.C.A § 30143.

180.    FECA, in turn, authorized the Federal Election Commission ("FEC") to promulgate regulations.

181.    The FEC has promulgated regulations that "federal law supersedes state law concerning the limitations on contributions and expenditures regarding federal candidates and political committees." 11 C.F.R. § 108.7(b)(3).

182.    FECA already regulates spending by foreign nationals in connection with federal, state, and local elections. 452 U.S.C. § 30121(a)(1). Specifically, the FEC allows corporations, including those that meet the definition of foreign influenced under Minnesota law, to make independent expenditures in connection with federal elections. 11 CFR § 114.10.

183.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 seek to regulate the use of independent expenditures by entities for the election of federal candidates, which conflicts with the FECA and the FEC regulations that "supersede and preempt any provision of State law with respect to election to Federal office." 52 U.S.C.A § 30143, *see also* 11 C.F.R. § 108.7(b)(3).

184.    The Chamber is entitled to a declaration that Minnesota statutes sections § 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 are preempted under the Supremacy Clause. *See* 28 U.S.C. § 2201.

185.   The Chamber is entitled to a declaration that Minnesota Statutes section 211B.16, subd. 3, shall not and will not be deemed to authorize County Attorneys such as Defendant Choi to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, and subd. 4b. *See* 28 U.S.C. § 2201.

186.   The Chamber is further entitled to a declaration that Minnesota Statutes sections 10A.022 and 211B.15, subds. 6 and 7 shall not and will not be deemed to authorize the CFPB Defendants to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b. *See* 28 U.S.C. § 2201.

187.   The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

## COUNT VIII

### (Injunctive Relief for Violation of the Supremacy Clause on Behalf of the Chamber)

188.   The Chamber realleges all of the paragraphs of this Complaint as if fully set forth herein.

189.   The United States Constitution provides, "This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

190.    Congress enacted FECA, which expressly provides that it shall "supersede and preempt any provision of state law with respect to election of federal office." 52 U.S.C.A § 30143.

191.    FECA, in turn, authorized the Federal Election Commission ("FEC") to promulgate regulations.

192.    The FEC has promulgated regulations that "federal law supersedes state law concerning the limitations on contributions and expenditures regarding federal candidates and political committees." 11 C.F.R. § 108.7(b)(3).

193.    FECA already regulates spending by foreign nationals in connection with federal, state, and local elections. 452 U.S.C. § 30121(a)(1). Specifically, the FEC allows corporations, including those that meet the definition of foreign influenced under Minnesota law, to make independent expenditures in connection with federal elections. 11 CFR § 114.10.

194.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 seek to regulate the use of independent expenditures by entities for the election of federal candidates, which conflicts with the FECA and the FEC regulations that "supersede and preempt any provision of State law with respect to election to Federal office." 52 U.S.C.A § 30143, *see also* 11 C.F.R. § 108.7(b)(3).

195.    Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 are preempted, and should therefore be stricken as unconstitutional under the Supremacy Clause.

196.    Because Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a, subd. 4b, and 211B.01, subd. 3 are preempted, Defendants should not be permitted to enforce and prosecute these unconstitutional statutes.

197.    The Chamber is highly likely to prevail on the merits of this action.

198.    The Chamber will suffer irreparable harm if Defendants are not enjoined from enforcing these unconstitutional prohibitions.

199.    Defendants will not suffer any harm if they are prevented from enforcing these Minnesota statutes, which are unconstitutional.

200.    The public interest will clearly be served by granting the Chamber's request for injunctive relief.

201.    Accordingly, the Chamber is entitled to preliminary and permanent injunctive relief prohibiting Defendants from enforcing the unconstitutional provisions of Minnesota law. *See* 42 U.S.C. § 1983.

202.    The Chamber is also entitled to its costs and reasonable attorneys' fees incurred in connection with this action. *See* 42 U.S.C. § 1988.

## JURY DEMAND

203.    The Chamber demands a jury trial as to all such issues, claims, and matters that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** The Chamber, on behalf of its members and itself, prays for the following relief from this Court:

1. An order declaring and adjudicating that Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a and subd. 4b and 211B.01, subd. 3 are unconstitutional, and therefore invalid and unenforceable, to the extent they prohibit and/or chill free speech and/or are preempted;

2. An order declaring and adjudicating that Minnesota Statutes section 211B.16, subd. 3, shall not and will not be deemed to authorize County Attorneys such as Defendant Choi to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b;

3. An order enjoining Defendant Choi, in his capacity as a Minnesota County Attorney, from enforcing Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a and subd. 4b and 211B.01, subd. 3;

4. An order declaring and adjudicating that Minnesota Statutes sections 10A.022 and 211B.15, subds. 6 and 7 shall not and will not be deemed to authorize the CFPD Defendants to enforce Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), 4a, and 4b;

5. An order enjoining the CFPD Defendants from enforcing Minnesota statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a and subd. 4b and 211B.01, subd. 3;

6.  An order awarding the Chamber its costs and expenses incurred in the instant litigation, including its reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;

7.  An order for such other and further relief as may be just and appropriate under the circumstances.

Dated: June 30, 2023                    **WINTHROP & WEINSTINE, P.A.**

By: *s/Thomas H. Boyd*
    Thomas H. Boyd, #200517
    Tammera R. Diehm, #327566
    Kyle R. Kroll, #398433
    Jordan E. Mogensen, #0400919
    Cianna G. Halloran, #0402841
    225 South Sixth Street, Suite 3500
    Minneapolis, Minnesota 55402
    T: (612) 604-6400
    tboyd@winthrop.com
    tdiehm@winthrop.com
    kkroll@winthrop.com
    jmogensen@winthrop.com
    challoran@winthrop.com

    *Attorneys for The Minnesota*
    *Chamber of Commerce*

26697134v1