# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| Minnesota Chamber of Commerce, *a Minnesota nonprofit corporation*, | ) ) ) | Case No.: 0:23-cv-02015 (ECT/DJF) |
| Plaintiff, | ) ) ) |  |
| vs. | ) ) |  |
| John Choi, *in his official capacity as* County Attorney for Ramsey County, Minnesota; George Soule, *in his official capacity as* Chair of the Minnesota Campaign Finance and Public Disclosure Board; David Asp, *in his official capacity as* Vice Chair of the Minnesota Campaign Finance and Public Disclosure Board; Carol Flynn, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; Margaret Leppik, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; Stephen Swanson, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; and Faris Rashid, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **[PROPOSED]**<br><br>**PRELIMINARY INJUNCTION** |
| Defendants. | ) ) ) |  |

Plaintiff Minnesota Chamber of Commerce ("Chamber") initiated this litigation against John Choi, *in his official capacity as* County Attorney for Ramsey County, Minnesota ("Choi"); George Soule, *in his official capacity as* Chair of the Minnesota Campaign Finance and Public Disclosure Board, David Asp, *in his official capacity as* Vice

Chair of the Minnesota Campaign Finance and Public Disclosure Board, Carol Flynn, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board, Margaret Leppik, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board, Stephen Swanson, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board, and Faris Rashid, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board (collectively "Board Defendants") regarding recently enacted Minnesota Statutes sections 211B.15, subds. 1 (a), (b), (c), (d), (e), subd. 4a and subd. 4b and 211B.01, subd. 3 (the "statute"). The statute goes into effect on January 1, 2024.

The Chamber moved for a preliminary injunction to enjoin all Defendants from taking any action to enforce the statute during the pendency of this litigation prior to the final adjudication on the merits. Based upon the motion papers, record, and arguments of counsel, the Court enters the following Findings of Fact, Conclusions of Law, and Order granting the Chamber's Motion for a Preliminary Injunction.

### **FINDINGS OF FACT**

1. Plaintiff Minnesota Chamber of Commerce asserts claims on behalf of itself and its members against Defendants, in their official capacities, challenging the constitutionality of the statute, which goes into effect on January 1, 2024, and seeking declaratory relief holding the statute is unconstitutional and preempted by federal law, and both preliminary and permanent injunctive relief enjoining Minnesota County Attorneys and the Minnesota Campaign Finance and Public Disclosure Board from enforcing the statute. (*See* Dkt. No. 1 & Ex. A.)

2

2.       The Campaign Finance and Public Disclosure Board is a Minnesota state agency empowered to audit, investigate, and enforce the relevant provisions of Chapter 10A and the statute, throughout the state, including by imposing civil penalties on persons and entities who violate Chapter 211B. *See id.*; Minn. Stat. § 211B.15, subds. 6, 7 (2023). The Board Defendants are members of the Board and are sued in their official capacities.

3.       Defendant John Choi is the County Attorney for Ramsey County, Minnesota, and is a Minnesota County Attorney as such is responsible under Minnesota statute § 211B.16, subdivision 3, for enforcement of the statute in Ramsey County.

4.       The Chamber brings this civil action for declaratory and injunctive relief on behalf of itself and its members seeking an order that the statute unconstitutionally restricts and prohibits speech by corporations and limited liability companies who the Legislature has defined as "foreign influenced corporations."

5.       The statute restricts and prohibits contributions and expenditures related to candidates or ballot questions by corporations, limited liability companies, and non-profit corporations who the Legislature has defined as "foreign influenced corporations," which includes entities for which (a) a single foreign investor "has direct or indirect beneficial ownership of one percent or more of the total equity"; (b) two or more foreign investors "have direct or indirect beneficial ownership of five percent or more of the total equity"; or (c) in the case of a nonprofit, membership dues are obtained from a corporation or limited liability company that meets one of the prior two criteria in (a) or (b) above. *See* Minn. Stat. § 211B.15, subd. 4a.

3

6.     Furthermore, the statute imposes filing and reporting requirements on for-profit corporations, non-profit corporations, and limited liability companies to certify, through their duly authorized officers, that they are not "foreign influenced" as of the date of any contribution or expenditure. *See* Minn. Stat. § 211B.15, subd. 4b.

7.     Violations of the statute carry potentially heavy fines and penalties. These entities may be fined up to $40,000 and/or be dissolved. Individuals acting on behalf of these entities, such as officers or executives, may be fined not more than $20,000, imprisoned for not more than five years, or both. *See* Minn. Stat. § 211B.15, subd. 6.

8.     The Chamber alleges these restrictions, prohibitions, and requirements imposed by the statute are unconstitutional on their face and as applied under the First Amendment to the United States Constitution, as interpreted in cases such as *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) and *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978), because the restrictions imposed by the statute abridges free speech by these for-profit corporations, limited liability companies, and non-profit corporations.

9.     The Chamber further alleges that this statute is unconstitutional under the Supremacy Clause of the United States Constitution because it is preempted by federal law, including but not limited to the Federal Election Campaign Act, 52 U.S.C.§ 30143(a); 52 U.S.C. § 30121(a)(1), and regulations promulgated by the Federal Elections Commission, *e.g.*, 11 C.F.R. § 110.20(i); FEC Advisory Opinion No. 2006-15 (May 19, 2006).

10.     The Chamber asserts the statute seeks to change the current status quo; and, therefore, the Chamber seeks preliminary injunctive relief enjoining Minnesota County

Attorneys, such as Defendant John Choi, and the Minnesota Campaign Finance and Public Disclosure Board, whose members are also Defendants, from enforcing the statute pending a final determination and adjudication on the merits.

11.     The statute goes into effect on January 1, 2024. Multiple declarants have testified that the statute *already has* chilled their entity's speech and caused harm, and that the statute will chill their entity's speech and cause further harm once the statute becomes effective on January 1, 2024.

12.     Declarant Doug Loon, who is CEO of the Chamber, testified that the statute has harmed and will harm the Chamber and its members. (*See* Loon Decl. ¶¶8-44.) Among other things, Mr. Loon explained that over 100 of the Chamber's members would be deemed "foreign influenced corporations" based on their ownership, and their speech would be censored under the statute. (*Id.* ¶15.) Mr. Loon also explained that the Chamber will be restricted from using membership dues for contributions to a political action committee called Pro Jobs Majority, which the Chamber has contributed to in past election cycles. (*Id.* ¶¶16-31.) Under the statute, the Chamber is precluded from making the same level of contributions in connection with the upcoming 2024 election, and the Chamber has suffered an increased tax consequence in 2023 due to the necessity of making advance contributions before the statute goes into effect. (*Id.* ¶¶32-44.)

13.     Declarant Archie Black is the former CEO and current Executive Chairman of the Board of Directors of SPS Commerce, which is a publicly-traded company. (Black Decl. ¶¶1-4.) He testified that SPS "could likely meet [the statute's definition of 'foreign influenced corporation'] at any given time up to and through the 2024 general election

because its stock is publicly traded and therefore ownership changes occur daily…. Consequently, it is quite possible that a foreign investor may own 1% or more in stock or that multiple foreign investors could own 5% or more in stock in SPS at any given time…." (*Id.* ¶7.) He testified that SPS could not make the statutory certification requirements because "we do not have visibility or ready access into the nationality of each shareholder…. Additionally, SPS stock is constantly bought and sold on the NASDAQ. Therefore, it is not possible to determine precisely at the time of an expenditure whether SPS meets the definition of 'foreign influenced.'" (*Id.* ¶¶9, 11.) "In the absence of this statute, SPS would intend to make such expenditures in the future," and "has exercised its free speech rights to support our communities in the past," such as by making "expenditures to support the recent ballot question initiative known as the 'Page Amendment.'" (*Id.* ¶¶13-15.) SPS will not be able to make similar contributions in the future under the statute because it "cannot put itself or its officers and directors at risk for facing civil penalties or criminal prosecution." (*Id.* ¶26.)

14.     Declarant Carlos Seoane Quinteiro is the co-founder and CEO of Deeloh Technologies, Inc., d/b/a Extempore. (Quinteiro Decl. ¶1.) He testified Extempore meets the statutory definition of a "foreign influenced corporation" because one of its shareholders is a United Kingdom national who holds 1.812% of the company's stock. (*Id.* ¶8.) As such, Extempore will be precluded from making independent expenditures, even though it would be "likely to engage in such expenditures to support ballot initiatives prioritizing education such as the Page Amendment." (*Id.* ¶13.) He also testified Extempore would like its membership dues to the Chamber to be used for potential independent

expenditure activities, but understands the Chamber will not be able to do so. (*Id.* ¶17.) Therefore, Extempore's speech has been chilled. (*Id.* ¶18.)

15.    Declarant Eric Nerland is the co-founder and CEO of Lake of the Woods Cannabis Company. (Nerland Decl. ¶1.) He testified Extempore meets the statutory definition of a "foreign influenced corporation" because one of its shareholders is a Canadian national who holds 19.5% of the company's stock. (*Id.* ¶7.) As such, the company will be precluded from making independent expenditures, even though it would be "likely to engage in such expenditures to support civic and political initiatives related to the production and sale of cannabis products," which were recently legalized in the 2023 Minnesota legislative session. (*Id.* ¶¶12-13.) Lake of the Woods "is particularly invested and interested in the next year of political and civic discussion surrounding the regulation of cannabis businesses in Minnesota." (*Id.* ¶16.) He also testified Lake of the Woods would like its membership dues to the Chamber to be used for potential independent expenditure activities, but understands the Chamber will not be able to do so. (*Id.* ¶¶20-21.) Therefore, Lake of the Woods' speech has been chilled as well. (*Id.* ¶22.)

16.    The legislative history for the statute shows that its authors and other supporters in the Minnesota Legislature intended the statute to limit the effect and reach of the Supreme Court's *Citizens United* holding protecting free speech rights, as well as to reduce spending in connection with elections overall.

## <u>CONCLUSIONS OF LAW</u>

1.    In determining the propriety of issuing a preliminary injunction under Federal Rule of Civil Procedure 65, this Court analyzes the following four factors: (1) the

threat of irreparable harm to the movant; (2) the probability that movant will succeed on the merits; (3) the balance between the harm to the movant and the injury that granting the injunction will inflict on the other party; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*).

2.      In analyzing a request for preliminary injunctive relief, "no single factor is determinative," but rather, "the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113.

3.      "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011), *opinion vacated on other grounds on reh'g*, 705 F.3d 845 (8th Cir. 2012).

4.      In the absence of immediate injunctive relief, the Chamber and its members face harm by being restricting from making contributions and independent expenditures in the upcoming 2024 election. This silencing of business voices constitutes irreparable harm under the First Amendment. The threat of irreparable harm is demonstrated by the declarations of business leaders stating their speech will be chilled on issues ranging from educational policy, to cannabis policy, to local and state candidacies, and more. The Chamber's speech, such as through contributions to Pro Jobs Majority, is also chilled.

5.      The Chamber is likely to prevail on the merits of its claims. The statute is in direct conflict with United States Supreme Court precedent under *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010) and *First Nat'l Bank of Boston v.*

8

*Bellotti*, 435 U.S. 765 (1978). The statute is facially overbroad, underinclusive, not narrowly tailored, and preempted by federal law, and it is invalid as applied. Among other things, the 1% and 5% ownership thresholds are arbitrary and have no factual basis; and even businesses (such as publicly-traded companies) that would not meet these ownership thresholds will still censor their speech because they are unable to precisely and contemporaneously certify the nationality of their owners and their overall ownership demographics on a particular day. Furthermore, the purposes behind the statute—restricting the scope of binding Supreme Court precedent, such as *Citizens United*, and reducing election spending—are not legitimate governmental interests.

6.     Moreover, the statute's 1% and 5% thresholds to qualify as a "foreign influenced corporation" are preempted by federal law. With respect to federal elections, federal law is exclusive, *see* 52 U.S.C.§ 30143(a), and permits contributions or expenditures by corporations or limited liability companies on the basis of their ownership. *See* 52 U.S.C. § 30121(a)(1), 11 C.F.R. § 110.20(i); FEC Advisory Opinion No. 2006-15 (May 19, 2006). The statute's attempt to regulate speech in connection with federal elections is, therefore, expressly preempted. As to state and local elections, the same federal law already prohibits certain direct or indirect participation by foreign nationals in connection with corporate contributions and expenditures. These laws apply to state and local elections, and they permit contributions or expenditures by corporations or limited liability companies on the basis of their ownership. The Minnesota statute thus conflicts with federal law and is also impliedly preempted under the Supremacy Clause.

7.      Defendants face no potential harm if they are enjoined from enforcing the statute. Instead, the status quo will be maintained, and Defendants will simply not be required to enforce the statute.

8.      Public policy favors an injunction in this case to preserve the speech of the Chamber, its members, and the business community during this case, which will likely include speech in connection with the 2024 election.

9.      The Court must determine the amount of security, if any, that would be proper "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. Here, preservation of the status quo in the form of the injunction the Chamber seeks will cause no costs or damages to Defendants. Accordingly, the Court will not impose any requirement for the Chamber to post a bond.

## **ORDER**

1.      Plaintiff's Motion for a Preliminary Injunction is hereby **GRANTED**.

2.      Minnesota County Attorneys, including Defendant Choi, in their official capacities, are enjoined from enforcing the "foreign influenced corporation" provisions in amended Minnesota statute § 211B.15, including new subdivisions 4a and 4b, and any related rules and regulations;

3.      The Board Defendants, in their official capacities, are enjoined from enforcing the "foreign influenced corporation" provisions in amended Minnesota statute § 211B.15, including new subdivisions 4a and 4b, and any related rules or regulations;

4.      Defendants and Minnesota County Attorneys are enjoined from pursuing civil or criminal liability for any alleged violations of the "foreign influenced corporation"

provisions in amended Minnesota statute § 211B.15, including new subdivisions 4a and 4b, and any related rules and regulations, that allegedly occur during the term of this preliminary injunction;

5.      Pursuant to Federal Rule of Civil Procedure 65(d)(2), the above provisions shall also bind and enjoin Defendants' agents, employees, and attorneys, and all other persons in active concert or participation with them, such as all Minnesota County Attorneys;

6.      The Chamber shall have leave to amend its operative complaint to join and seek similar relief as to any state actor who seeks to enforce, in any way, the "foreign influenced corporation" provisions in amended Minnesota statute § 211B.15, including subdivisions 4a and 4b, and any related rules and regulations, during the term of this preliminarily injunction; and

7.      The preliminarily injunction shall remain in full force and effect until the latter of the expiration of the time to appeal final judgment of this matter or the exhaustion of any appeal(s) of that judgment.


Dated: _____               _____
                                         ERIC C. TOSTRUD
                                         United States District Judge

27331441v3

11