UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Chamber of Commerce, *a Minnesota nonprofit corporation*,<br><br>Plaintiff,<br><br>vs.<br><br>John Choi, *in his official capacity as* County Attorney for Ramsey County, Minnesota; George Soule, *in his official capacity as* Chair of the Minnesota Campaign Finance and Public Disclosure Board; David Asp, *in his official capacity as* Vice Chair of the Minnesota Campaign Finance and Public Disclosure Board; Carol Flynn, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; Margaret Leppik, *in her official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; Stephen Swanson, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board; and Faris Rashid, *in his official capacity as* Member of the Minnesota Campaign Finance and Public Disclosure Board,<br><br>Defendants. | Case No.: 0:23-cv-02015 (ECT/DJF)<br><br>[*PROPOSED*]<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>AND<br><br>ENTERING PERMANENT INJUNCTION |

The above-captioned matter came before the Court on October 15, 2024, on Plaintiff Minnesota Chamber of Commerce's ("Chamber") Motion for Summary Judgment and for the entry of a permanent injunction. Based upon the motion papers, record, and arguments

1

of counsel, the Court enters the following Findings of Fact, Conclusions of Law, and Order granting summary judgment and entering a permanent injunction.

## FINDINGS OF FACT

1. The Chamber asserts claims on behalf of itself and its members against Defendants, in their official capacities, challenging the constitutionality of the "foreign influenced corporation" provisions in amended Minnesota Statute § 211B.15, those provisions being subdivisions 1(b), 1(d), 1(e), 4a, 4b, the reference to "4a" in subdivision 7b(2), and any related rules and regulations (collectively "statute"), which was set to go into effect on January 1, 2024, seeking declaratory relief holding the statute is unconstitutional and preempted by federal law, and both preliminary and permanent injunctive relief enjoining Minnesota County Attorneys and the Minnesota Campaign Finance and Public Disclosure Board from enforcing the statute. (*See* Dkt. No. 1 & Ex. A.)

2. The Campaign Finance and Public Disclosure Board is a Minnesota state agency empowered to audit, investigate, and enforce the relevant provisions of Chapter 10A and the statute, throughout the state, including by imposing civil penalties on persons and entities who violate Chapter 211B. *See id.*; Minn. Stat. § 211B.15, subds. 6, 7. The Board Defendants are members of the Board and are sued in their official capacities.

3. Defendant John Choi is the County Attorney for Ramsey County, Minnesota, and is a Minnesota County Attorney as such is responsible under Minnesota Statutes § 211B.16, subdivision 3, for enforcement of the statute in Ramsey County.

4. The Chamber brings this civil action for declaratory and injunctive relief on behalf of itself and its members seeking an order that the statute unconstitutionally restricts

and prohibits speech by corporations and limited liability companies who the Legislature has defined as "foreign influenced corporations."

5. The statute restricts and prohibits contributions and expenditures related to candidates or ballot questions by corporations, limited liability companies, and non-profit corporations based on the Legislature's definition of "foreign influenced corporations," which means entities in which (a) a single foreign investor "has direct or indirect beneficial ownership of one percent or more of the total equity"; (b) two or more foreign investors "have direct or indirect beneficial ownership of five percent or more of the total equity"; or (c) in the case of a nonprofit, membership dues are obtained from a corporation or limited liability company that meets one of the prior two criteria in (a) or (b) above. *See* Minn. Stat. § 211B.15, subd. 4a.

6. Furthermore, the statute imposes filing and reporting requirements on for-profit corporations and limited liability companies to certify, through their duly authorized officers, that they are not "foreign influenced corporations" as of the date of any contribution or expenditure. *See* Minn. Stat. § 211B.15, subd. 4b.

7. Violations of the statute carry potentially severe fines and penalties. These entities may be fined up to $40,000 and/or be dissolved. Individuals acting on behalf of these entities, such as officers or executives, may be fined not more than $20,000, imprisoned for not more than five years, or both. *See* Minn. Stat. § 211B.15, subd. 6.

8. The Chamber alleges these restrictions, prohibitions, and requirements imposed by the statute are unconstitutional on their face and as applied under the First Amendment to the United States Constitution, as interpreted in cases such as *Citizens United v. Fed.*

3

*Election Comm'n*, 558 U.S. 310 (2010) and *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978), because the restrictions imposed by the statute abridges free speech by for-profit corporations, limited liability companies, and non-profit corporations.

9. The legislative history for the statute shows that its authors and other supporters in the Minnesota Legislature intended the statute to limit the effect and reach of the Supreme Court's *Citizens United* holding protecting free speech rights, as well as to reduce spending in connection with elections overall.

10. The Chamber further alleges that this statute is unconstitutional under the Supremacy Clause of the United States Constitution because it is preempted by federal law, including but not limited to the Federal Election Campaign Act, 52 U.S.C. § 30143(a); 52 U.S.C. § 30121(a)(1), and regulations promulgated by the Federal Elections Commission, *e.g.*, 11 C.F.R. § 110.20(i); FEC Advisory Opinion No. 2006-15 (May 19, 2006).

11. The Chamber seeks declaratory relief that this statute would violate the First Amendment and is unconstitutional under the Supremacy Clause of the United States Constitution, and requests permanent injunctive relief enjoining Minnesota County Attorneys, such as Defendant John Choi, and the Minnesota Campaign Finance and Public Disclosure Board, whose members are also Defendants, from enforcing the statute pending a final determination and adjudication on the merits.

12. The statute was set to go into effect on January 1, 2024, but the Court entered a preliminary injunction on December 20, 2023, enjoining Defendants from enforcing it. (*See* Dkt. No. 109.) The Court held the Chamber was likely to succeed on its claims and that Defendants had not met their burden under strict scrutiny to justify the statute.

13. Multiple declarants who own or manage representative Minnesota businesses have testified that the statute would chill their speech and cause harm.

14. Declarant Doug Loon, who is CEO of the Chamber, testified that the Chamber represents over 6,300 businesses in Minnesota. (Declaration of Doug Loon dated July 18, 2024 ("Loon Decl.") ¶2.) As such, the Chamber regularly advocates for and advances pro-business legislation. (*Id.* at ¶3.) The Chamber's membership includes privately-held and publicly-traded companies throughout Minnesota. (*Id.* ¶8.) At least 100 of the Chamber's members would be implicated by the statute because they are either publicly-traded and cannot ascertain whether they qualify as "foreign influenced corporations" under the statute, or they are privately-held and meet the statute's thresholds. (*Id.* at ¶¶8-12.) Historically, the Chamber has budgeted for "grassroots and political expenditures" in substantial sums per year. (Declaration of Thomas H. Boyd dated July 19, 2024 ("Boyd Decl."), Ex. Q at 41:11-42:18.) This includes contributions to Pro Jobs Majority fund ("Pro Jobs"), as permitted by Minnesota Statute §10A.12. (Loon Decl. ¶17.) In the 2022 election, the Chamber made independent expenditures of over $1.3 million to Pro Jobs. (*Id.* ¶20.) But the Chamber's ability to continue its historic political spending in the future is threatened by the restrictions imposed by the statute. (*Id.* ¶¶41-43.) To comply with the statute, the Chamber must either: (a) refrain from making any contributions to Pro Jobs because some of these funds may have come from members who meet the statute's definition of "foreign-influenced corporations" or (b) segregate membership revenue and utilize only those dues it can confirm with certainty have been made by members who do not meet the statute's definition of "foreign-influenced corporations" *on the day the*

5

*membership revenue was received*. But the Chamber cannot practically separate membership revenue in this way. The Chamber would need to be able to verify which of its over 6,300 members are "foreign influenced" as of the date each paid membership dues and segregate those funds in a separate account. (*Id.* ¶23.) But the Chamber does not have the resources to be able to determine with reasonable accuracy which of its members do or do not qualify as "foreign influenced" at any given time. (*Id.* ¶¶26-28.) Moreover, many of the Chamber's members themselves are unable to determine whether they meet the definition of a "foreign influenced corporation." (*Id.* ¶29.) Thus, it is practically impossible for the Chamber to continue making political contributions and comply with the statute. The Court's preliminary injunction enabled the Chamber to resume its contributions, which it did on June 25, 2024, in the amount of $500,000 to Pro Jobs. (*Id.* ¶¶38-39.) The Chamber plans to make these kinds of contributions in the future so long as the statute is not enforced. (*Id.* ¶¶40-41.)

15. Declarant Archie Black is the former CEO and Executive Chairman of the Board of Directors of SPS Commerce, which is a publicly-traded company. (Declaration of Archie Black dated October 24, 2023 ("Black Decl.") ¶¶1-4.) He testified that SPS "could likely meet [the statute's definition of 'foreign influenced corporation'] at any given time up to and through the 2024 general election because its stock is publicly traded and therefore ownership changes occur daily…. Consequently, it is quite possible that a foreign investor may own 1% or more in stock or that multiple foreign investors could own 5% or more in stock in SPS at any given time…." (*Id.* ¶7.) He testified that SPS could not make the statutory certification requirements because "we do not have visibility or ready access

6

into the nationality of each shareholder…. Additionally, SPS stock is constantly bought and sold on the NASDAQ. Therefore, it is not possible to determine precisely at the time of an expenditure whether SPS meets the definition of 'foreign influenced.'" (*Id.* ¶¶9, 11.) "In the absence of this statute, SPS would intend to make such expenditures in the future," and "has exercised its free speech rights to support our communities in the past," such as by making "expenditures to support the recent ballot question initiative known as the 'Page Amendment.'" (*Id.* ¶¶13-15.) SPS will not be able to make similar contributions in the future under the statute because it "cannot put itself or its officers and directors at risk for facing civil penalties or criminal prosecution." (*Id.* ¶26.) While SPS has not made independent political expenditures or contributions in 2024, it wants to be able to do so in the near future. (Boyd Decl., Ex. P at 111:12-25.) For example, SPS is very active in supporting education initiatives that benefit the community and enhance the quality of the workforce; and SPS would likely want to make contributions to support the Page Amendment when it becomes a ballot question. (*Id.* at 94:3-24.) SPS also supports the Chamber's mission, and supports using member dues for political expenditures and contributions. (*Id.* at 90:8-16; 139:2-140:18.)

16.   Declarant Carlos Seoane Quinteiro is the co-founder and CEO of Deeloh Technologies, Inc., d/b/a Extempore. (Declaration of Carlos Seone dated July 19, 2024 ("Quinteiro Decl.") ¶1.) Under the statute, Extempore is a "foreign influenced corporation" because one of its shareholders is a foreign national: a United Kingdom national who owns 1.656% stock (as of July 19, 2024). (*Id.* at ¶9.) While Extempore has not yet made a contribution or expenditure, its CEO testified that Extempore intends to exercise the right

7

to do so in the future. (Boyd Decl., Ex. T at 141:13-142:2.) Extempore also seeks to have the membership dues it pays to the Chamber available for the Chamber to advance is mission, including for use as political expenditures and contributions. (Quinteiro Decl. ¶¶16-17.) But Extempore's CEO is concerned that if the statute is upheld, Extempore's membership would undermine the Chamber's ability to make independent expenditures to advance the policies Extempore supports. (Boyd Decl., Ex. T at 165:11-21.) Consequently, Extempore would likely have to discontinue its membership in the Chamber if the statute is upheld because "we don't want to run the risk of our dues being considered political speech" in violation of the statute with its statutory penalties ad punishments. (*Id.* at 151:2-9.)

17. Declarant Eric Nerland is the co-founder and CEO of Lake of the Woods Cannabis Company ("LW"). (Declaration of Eric Nerland dated July 19, 2024 ("Nerland Decl.") ¶1.) He testified LW meets the statutory definition of a "foreign influenced corporation" because one of its shareholders is a Canadian national who holds 19.5% of the company's stock. (*Id.* ¶7.) LW was formed in 2021 following Minnesota's historic legislation legalizing recreational cannabis. (Boyd Decl., Ex. S at 28:20-29:16.) Currently, LW seeks to expand its business to own dispensaries. (*Id.* at 32:4-22.) LW is actively researching candidates and campaigns that are pro-cannabis and support future dispensary businesses in the following Minnesota counties: Olmstead, Koochiching, Goodhue, Wabasha, and Roseau. (Nerland Decl. at ¶16.) LW intends to make independent expenditures yet this year and has taken steps to do so. (*Id.* at ¶18.) In fact, LW has been politically active in "speaking with lobbyists, representatives, interested political parties."

8

(Boyd Decl., Ex. S at 105:13-25.) In addition, LW pays membership dues in part to advance the Chamber's mission, including pro-business initiatives and political spending. (Nerland Decl. ¶21.) If the statute is upheld and allowed to become effective, the Chamber would not be permitted to use LW's dues for political expenditures and contributions. (*Id.* at ¶23.)

18. As stated, the Court held the Chamber was likely to succeed on the merits of its Frist Amendment challenge to the statute when it granted the preliminary injunction on December 20, 2023. (*See* Dkt. No. 109.)

19. Since issuing the preliminary injunction order, the parties proceeded through fact and expert discovery. Defendants have not cited or provided any evidence to support their burden under strict scrutiny to justify the law's restrictions on the First Amendment rights of American businesses.

## CONCLUSIONS OF LAW

1. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation." *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 720 (8th Cir. 2019).

2. Laws that restrict political speech "are subject to strict scrutiny, which requires the Government to prove that the restriction [1] furthers a compelling interest and [2] is narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 310.

3. The Chamber has established the statute violates the Frist Amendment because the statute is in direct conflict with United States Supreme Court precedent under *Citizens*

*United v. Federal Election Commission*, 558 U.S. 310 (2010) and *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978).

4. The statute is facially overbroad, underinclusive, not narrowly tailored, and it is also invalid as applied. Among other things, the 1% and 5% ownership thresholds are arbitrary and have no evidentiary support; and even businesses (such as publicly-traded companies) that would not meet these ownership thresholds will still censor their speech because it is undisputed they cannot precisely and contemporaneously certify the nationality of their owners and their overall ownership demographics on a particular day, which is what the statute requires when they make a contribution or expenditure.

5. Moreover, the statute's 1% and 5% thresholds to qualify as a "foreign influenced corporation" are preempted by federal law. With respect to federal elections, federal law is exclusive, *see* 52 U.S.C.§ 30143(a), and permits contributions or expenditures by corporations or limited liability companies on the basis of their ownership. See 52 U.S.C. § 30121(a)(1), 11 C.F.R. § 110.20(i); FEC Advisory Opinion No. 2006-15 (May 19, 2006). The statute's attempt to regulate speech in connection with federal elections is, therefore, expressly preempted.

6. As to state and local elections, the same federal law already comprehensively prohibits direct or indirect participation by foreign nationals in connection with corporate contributions and expenditures. These federal laws explicitly apply to state and local elections, and they permit contributions or expenditures by corporations or limited liability companies on the basis of their ownership. Congress's decision to regulate *all* elections in this specific area of campaign finance is a unique expression of its intent to occupy the

field and establish uniform regulation across the country. Therefore, Minnesota's attempts to further regulate are field preempted under the Supremacy Clause.

## **ORDER GRANTING JUDGMENT AND PERMANENT INJUNCTION**

For the foregoing reasons, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgement is hereby **GRANTED**.

2. The "foreign influenced corporation" provisions in amended Minnesota Statute § 211B.15, those provisions being subdivisions 1(b), 1(d), 1(e), 4a, 4b, the reference to "4a" in subdivision 7b(2), and any related rules and regulations, are unconstitutional under the First Amendment and the Supremacy Clause.

3. Minnesota County Attorneys, including Defendant Choi, in their official capacities, are permanently enjoined from enforcing the "foreign influenced corporation" provisions in amended Minnesota Statute § 211B.15, those provisions being subdivisions 1(b), 1(d), 1(e), 4a, 4b, the reference to "4a" in subdivision 7b(2), and any related rules and regulations.

4. The Board Defendants, in their official capacities, are permanently enjoined from enforcing the "foreign influenced corporation" provisions in amended Minnesota Statute § 211B.15, those provisions being subdivisions 1(b), 1(d), 1(e), 4a, 4b, the reference to "4a" in subdivision 7b(2), and any related rules and regulations.

5. Defendants and Minnesota County Attorneys are permanently enjoined from pursuing civil or criminal liability for any alleged violations of the "foreign influenced corporation" provisions in amended Minnesota Statute § 211B.15, those provisions being

subdivisions 1(b), 1(d), 1(e), 4a, 4b, the reference to "4a" in subdivision 7b(2), and any related rules and regulations.

6. Based upon the foregoing, the declaratory judgment and permanent injunction is effective and binding upon the parties hereto, their successors, and all other Minnesota County Attorneys within the District of Minnesota.

7. This Court shall retain jurisdiction over this matter for purposes of enforcement of the Order herein.

8. The Chamber is granted leave to move for recovery of its costs and expenses incurred in this litigation, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and may file its motion within 30 days of this Order in accordance with Federal Rule of Civil Procedure 54 and Local Rule 54.3.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: _____

ERIC C. TOSTRUD
United States District Judge

29218992v1