UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Minnesota Chamber of Commerce, *a Minnesota nonprofit corporation*, | File No. 23-cv-2015 (ECT/JFD) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| John Choi, *in his official capacity as County Attorney for Ramsey County, Minnesota*; George Soule, *in his official capacity as Chair of the Minnesota Campaign Finance and Public Disclosure Board*; David Asp, *in his official capacity as Vice Chair of the Minnesota Campaign Finance and Public Disclosure Board*; Carol Flynn, *in her official capacity as Member of the Minnesota Campaign Finance and Public Disclosure Board*; Dave Kleis, *sued in his official capacity only*; Stephen Swanson, *in his official capacity as Member of the Minnesota Campaign Finance and Public Disclosure Board*; and Faris Rashid*, in his official capacity as Member of the Minnesota Campaign Finance and Public Disclosure Board*, | |
| Defendants. | |

---

Thomas H. Boyd, Kyle R. Kroll, Cianna Halloran, Jordan Mogensen, and Tammera R. Diehm, Winthrop & Weinstine, P.A., Minneapolis, MN, for Plaintiff Minnesota Chamber of Commerce.

Brett Bacon, Kristine K. Nogosek, and Kevin Scott Plaisance, Ramsey County Attorney's Office, St. Paul, MN, for Defendant John Choi.

Janine Wetzel Kimble, Matthew Mason, and Nathan J. Hartshorn, Minnesota Attorney General's Office, St. Paul, MN, for Defendants George Soule, David Asp, Carol Flynn, Dave Kleis, Stephen Swanson, and Faris Rashid.

In this case, Plaintiff Minnesota Chamber of Commerce, a nonprofit membership organization representing more than 6,000 Minnesota businesses, prevailed on a First Amendment challenge to provisions of the Minnesota Fair Campaign Practices Act. Left alone, the challenged provisions would have forbidden some businesses with foreign ownership from exercising First Amendment free-speech rights in connection with elections for state and local public office and ballot questions in Minnesota. Summary judgment was entered in the Chamber's favor on its First Amendment challenge and Defendants were permanently enjoined from enforcing the challenged provisions. *Minn. Chamber of Com. v. Choi*, 765 F. Supp. 3d 821, 858 (D. Minn. 2025). The Chamber seeks an award of attorneys' fees, expert-witness fees, and expenses pursuant to 42 U.S.C. § 1988.

The larger issues usually associated with attorneys'-fees motions are not disputed here. Defendants do not disagree the Chamber is a prevailing party eligible to seek fees. Defendants do not question the reasonableness of the hourly rates charged by the Chamber's counsel. And Defendants do not challenge the reasonableness of the great majority of hours the Chamber's counsel spent litigating the case.

The Minnesota Campaign Finance and Public Disclosure Board's members (who will be referred to collectively as the "Board") raise four distinct challenges to portions of the Chamber's overall request. The Board argues the Chamber cannot recover: (1) its

expert-witness fees; (2) attorneys' fees it incurred representing third parties; (3) attorneys' fees for entries that were redacted in the time records filed by the Chamber's counsel; and (4) fees incurred for an electronic-discovery platform used by the Chamber's counsel.[1] These four challenges will be addressed in that order.

*The Expert-Witness-Fees Issue*

The Chamber requests $44,325.00 in expert fees. Its counsel "engaged two highly qualified experts to rebut the opinions of Defendants' expert," who charged "standard and customary rates." ECF No. 190 at 30. Expert Grubaugh's fee totaled $27,075.00. ECF No. 191-1 at 118. Expert Smith's fee totaled $17,250.00. ECF No. 191-1 at 121–22.

Here, expert fees are not recoverable as attorneys' fees. The Chamber sued under 42 U.S.C. § 1983, which is subject to the fee-shifting provisions of 42 U.S.C. § 1988. *See* ECF No. 1 ¶ 14. Under § 1988(b), a prevailing party in a § 1983 case is allowed reasonable attorneys' fees, but attorneys' fees do not include expert fees. *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 92 (1991) (holding that "attorney's fees and expert fees are distinct items of expense"), *superseded by statute on other grounds*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994). After *Casey*, Congress amended § 1988 to allow "expert fees as part of the attorney's fee," but that provision applies only to cases brought under §§ 1981

---

[1]   Ramsey County Attorney John Choi raised a fifth issue. He argued that liability for the payment of any fee award should be imposed on the Board alone, not on Ramsey County. The legislature resolved this issue by enacting a statute specific to this case that requires the Board to "pay, on behalf of all defendants, all fees and expenses awarded to the plaintiff." 2025 Minn. Sess. Law Serv., ch. 39, art. 1, § 7.

3

or 1981a. *See* 42 U.S.C. § 1988(c); *Jenkins ex rel. Jenkins v. Missouri*, 158 F.3d 980, 983 (8th Cir. 1998).

The Chamber argues that its expert fees are compensable because they are "the kind normally charged to clients" by attorneys. ECF No. 205 at 5 (quoting *Hixon v. City of Golden Valley*, No. 06-cv-1548 (RHK/JSM), 2007 WL 4373111, at *6 (D. Minn. Dec. 13, 2007)). Fair enough. But the Chamber cites no authority supporting the legal conclusion that this general attribute of expert fees—that attorneys often pass them on to clients as a component of the attorneys' bills—somehow overrides § 1988's text as the Supreme Court has interpreted it. The cases the Chamber cites do not support that proposition. *Hixon* does not discuss expert fees; its statement about costs "of the kind normally charged to clients by attorneys" comes from *Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (per curiam), which expressly *declined* to treat expert fees as a subset of attorneys' fees. *Pinkham* counted fax messages and express mail as reasonable out-of-pocket expenses; it rejected "expert witness fees in excess of the 28 U.S.C. § 1821(b) $40 limit." 84 F.3d at 295. Some cases the Chamber cites do not mention expert-witness fees. *See Delgado v. Hajicek*, No. 07-cv-2186 (RHK/RLE), 2009 WL 2366558, at *2 (D. Minn. July 30, 2009); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998). Two cases the Chamber cites discuss fee-shifting under Title VII, which unlike § 1983 allows for recovery of expert fees. *See Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1206 (N.D. Iowa 2003), *aff'd*, 382 F.3d 816 (8th Cir. 2004); *Miller v. Bd. of Regents of Univ. of Minn.*, 402 F. Supp. 3d 568, 597 (D. Minn. 2019); 42 U.S.C. § 2000e-5(k) (allowing expert fees for prevailing parties in Title VII cases). Another awarded attorneys' fees incurred when lawyers

4

consulted experts, but not expert fees for producing a report or testifying. *See North Dakota v. Heydinger*, No. 11-cv-3232 (SRN/SER), 2016 WL 5661926, at *25 (D. Minn. Sept. 29, 2016), *aff'd sub nom. North Dakota v. Lange*, 900 F.3d 565 (8th Cir. 2018) (Mem.). In the final case the Chamber cites, a court awarded expert witness fees without discussing § 1988's textual limits. *Courthouse News Serv. v. Schaefer*, 484 F. Supp. 3d 273, 280–81 (E.D. Va. 2020).

The Chamber will be awarded $80 for its two experts. *See* ECF No. 199 at 4. Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Those costs include "[f]ees and disbursements for printing and witnesses." 28 U.S.C. § 1920(3). Witness costs are capped at "$40 per day for each day's attendance" at a court hearing or deposition. 28 U.S.C. § 1821(b). "The logical conclusion from the language and interrelation of these provisions is that § 1821 specifies the amount of the fee that must be tendered to a witness, § 1920 provides that the fee may be taxed as a cost, and Rule 54(d) provides that the cost shall be taxed against the losing party unless the court otherwise directs." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). The Chamber's two experts were deposed over one day each, ECF Nos. 130-15, 149-1, so $80 is the maximum that can be awarded.[2]

---

[2] The Chamber did not seek witness fees in its Bill of Costs, *see* ECF No. 194, but that does not prevent it from recovering this amount via this motion. Judges are allowed to tax costs, not just the Clerk. *See* 28 U.S.C. § 1920(3). And "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Board did not argue that the Chamber should not be awarded this amount. ECF No. 199 at 4.

*The Fees-for-Third-Party-Representation Issue*

The Board argues that the Chamber is not entitled to the $58,992.00 its counsel, Winthrop & Weinstine, incurred representing witnesses from three Chamber members—Extempore, Lake of the Woods, and SPS Commerce—because these entities were not parties to the case. ECF No. 199 at 5–6. The Board identifies billing entries relating to third-party engagement letters, litigation holds, and discovery specific to these representations. *Id.* at 6–8. The Chief Executive Officers of Extempore, Lake of the Woods, and SPS Commerce filed declarations and were deposed, *see* ECF Nos. 62–64, 133, 135, 149-3, 149-4, 149-5. Winthrop represented them in these matters, and the Chamber paid the associated attorneys' fees. *See* ECF No. 191-1 at 3–115 (listing all billing entries).

The Board's argument is not convincing. In support, it cites a single authority, *Conlon v. City of North Kansas City*, 530 F. Supp. 985 (W.D. Mo. 1981), but this case does not support the proposition that the Chamber cannot recover fees reasonably incurred representing the Chamber's members. In *Conlon*, a church member and the church challenged a municipal regulation under § 1983 and prevailed, entitling them to seek attorneys' fees. *Conlon*, 530 F. Supp. at 986, 991. The court determined that the plaintiffs were entitled to attorneys' fees and costs under § 1988, but it did not address an attorneys'-fees motion or the question whether an organization may recover attorneys' fees associated with the legal representation of its members. *See id.*

It is true that only prevailing parties may recover fees under § 1988, not non-parties. *See Am. Fed'n of State Cnty. v. Scott*, No. 11-cv-21976-UU, 2012 WL 12845358, at *1

(S.D. Fla. Dec. 27, 2012). But the Chamber's members aren't seeking fees. The Chamber is. The question is whether that portion of the fees the Chamber incurred stemming from Winthrop's representation of member-witnesses to prepare for depositions, submit declarations, and produce documents were "reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Chamber persuasively argues they were. The Board "necessitated" the fees by requesting discovery from the three members. ECF No. 205 at 7. The Board served SPS Commerce, Lake of the Woods, and Extempore with deposition notices. *See id.*; ECF Nos. 149-3, 149-4, 149-5. And working with these witnesses was important to advancing the Chamber's standing arguments in this case. ECF No. 205 at 7. The Chamber sued on behalf of its members, *see* ECF No. 1 ¶¶ 4, 85–141 (counts brought on behalf of members), and it persuaded me that it possessed associational standing to seek relief in federal court because one of its members demonstrated an Article III injury, *see Choi*, 765 F. Supp. 3d at 835–40.

*The Redacted-Time-Records Issue*

The Board argues that the Chamber cannot recover $58,840.50 for billing entries that are entirely or partially redacted. ECF No. 199 at 11–13 (citing *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.")). The Chamber argues that *Hensley* does not forbid redactions, and the redactions protected privileges and were sparse. ECF No. 205 at 11–12.

The touchstone of fee awards is reasonableness. In this District, when billing entries are redacted, courts consider whether they can "evaluate the reasonableness of each and every billing entry" notwithstanding any redactions. *Harleysville Ins. Co. v. Physical*

7

*Distrib. Servs., Inc.*, No. 10-cv-2591 (DWF/AJB), 2012 WL 601036, at *2 n.2 (D. Minn. Feb. 23, 2012). "Redaction of billing records is acceptable so long as the court has sufficient information to form an opinion on the reasonableness of the fees. Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." *Protective Life Ins. Co. v. Kridner*, No. 12-cv-582 (JRT/JJG), 2013 WL 1249205, at *5 (D. Minn. Mar. 27, 2013) (quoting *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009))); *see LNV Corp. v. Outsource Servs. Mgmt., LLC*, No. 13-cv-1926 (JNE/LIB), 2018 WL 11471810, at *3 (D. Minn. July 18, 2018) (reducing hours by 15% in part because billing records were "heavily redacted" and "vague").[3]

Here, the partial redactions are minimal and do not interfere with the reasonableness assessment. Only sixty-five entries on ninety-nine pages of billing records include redactions. *See* ECF No. 191-1 at 1–115. Most of the partially redacted entries appear to discuss legal theories. *See, e.g.*, *id.* at 5 ("Review relevant statutory authority, [redacted], and related information . . . ."); *id.* at 16 ("Confer with lead counsel regarding results of research on [redacted]"); *id.* at 34 ("Review and further research [redacted]; confer with case team regarding the same . . . ."). Legal theories are opinion work product and "enjoy[]

---

[3] Some cases involve *in camera* review of redacted entries. *See In re RFC*, 399 F. Supp. 3d 827, 845 (D. Minn. 2019) (finding redactions proper on grounds of attorney-client privilege and work product, and where the party provided unredacted copies for *in camera* review); *ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, No. 16-cv-4070 (SRN/HB), 2021 WL 1668013, at *5–6 (D. Minn. Apr. 28, 2021) (same). That was not requested here, and for reasons that will be explained, I do not think it is necessary.

almost absolute immunity and can be discovered only in very rare and extraordinary circumstances," none of which are present here. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). These partial redactions do not make it difficult at all to assess the reasonableness of the requested fee. *See Orion Drilling Co. v. EQT Prod. Co.*, No. 16-1516, 2019 WL 4267386, at *4 (W.D. Pa. Sept. 10, 2019) ("The redacted material does not detract from the Court's ability to determine the nature of the work performed or that the work was performed in pursuit of the defense of this action."), *aff'd*, 826 F. App'x 204 (3d Cir. 2020).

Some redactions, it is true, make it impossible or very difficult to know what specific work was performed on some dates. For example, entries on June 3, 2024, and June 10, 2024, are entirely redacted. *See* ECF No. 191-1 at 91–92. Entries on other dates are partially redacted in ways that—if one considers just the out-of-context entries—provide little useful information. *See, e.g., id.* at 42, 100 (11/09/23 and 07/10/24 billing entries). Still other entries redact a descriptive clause that seems potentially unrelated to neighboring descriptions. *See, e.g., id.* at 74 ("Review and edit supplemental objections to SPS subpoena; [redacted]; Review materials regarding the same . . . ."). A judge might reasonably conclude that the Chamber's fee request should be reduced by entries in this category. For several reasons, the better answer here is not to do that. There is no indication the redactions are inappropriate or were made for any purpose other than to prevent disclosure of privileged information. There is no indication the redactions conceal non-compensable work. The Chamber's counsel reduced their recorded fees by a substantial amount prior to filing this motion, writing off $29,840.00 in fees and costs.

ECF No. 191 ¶ 4. In other words, if entries were not compensable, counsel have shown that they would write them off, not redact them. The motion and accompanying materials reflect diligence in their preparation and submission. It seems safe to infer from the entirety of the materials submitted to support the motion that this diligence and professionalism carried over to the redacted entries. Finally, the case was well- and efficiently presented by lawyers for all parties—the Chamber, the Board, and the County Attorney. Given my overall, firsthand experience with the case, there is every reason to think the redacted entries describe work that advanced the case's overall presentation.

*The Relativity Issue*

The Board argues that the Chamber is not entitled to $840 (or $60 per month) incurred to use Relativity, an electronic-discovery platform. *See* ECF No. 199 at 10–11; ECF No. 191-1 at 134 (summarizing billing entries for Relativity expenses). The Chamber sought "taxation of database hosting costs for the secure online storage of various documents," which "are typically billed directly to clients and are not commonly absorbed as overhead to be included in hourly rates." ECF No. 191 ¶ 13.

"Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001); *see Ark. United v. Thurston*, No. 5:20-CV-5193, 2023 WL 187507, at *5 (W.D. Ark. Jan. 13, 2023) (declining to tax cloud hosting fees as costs because "[f]or many attorneys, cloud storage has become as necessary and routine as an internet connection"). On the other hand, prevailing parties may seek "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys." *Pinkham*, 84 F.3d at 294–95.

The Chamber distinguishes *Emery* and *Thurston* from *Pinkham*: the former cases are about costs, and the latter case is about attorneys' fees. ECF No. 205 at 15. Costs are taxable if authorized by § 1920 or another statute, *see Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006), and the parties appear to agree that database hosting is not a taxable cost. See *Alzheimer's Inst. of Am. Inc. v. Elan Corp. PLC*, No. C-10-00482-EDL, 2013 WL 8744216, at *4 (N.D. Cal. Jan. 31, 2013) (discussing the "evolving caselaw" whether "database costs are compensable under Section 1920," and concluding they were excluded from the statute's "relatively narrow subset" of costs).

The Eighth Circuit has not given direct guidance regarding whether database hosting for electronic discovery counts as recoverable attorneys' fees, and other courts have reached different conclusions. See *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, No. SACV 14-1664 JVS (DFMx), 2020 WL 11232926, at *7 (C.D. Cal. Dec. 2, 2020) (awarding "eDiscovery database hosting" outside the category of "taxable costs"); *FTC v. Am. Future Sys., Inc.*, No. 20-2266, 2025 WL 1435628, at *35 (E.D. Pa. May 16, 2015) (clarifying that Third Circuit precedent limits recovery of database hosting expenses to costs).

Here, the better answer is that the Chamber has not met its burden of showing that the $60 per month Relativity cost is an out-of-pocket expense. This case is like *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 WL 11120966, at *12 (E.D. Wash. June 19, 2015). There, the court reasoned that "[t]he record is insufficient . . . to determine whether database hosting is incorporated into Plaintiffs' overhead costs, such as normal computer network operation, or whether there were unique costs associated with the database in this

11

matter that would otherwise be charged to a client." *Id.* Here, the Chamber's supporting declaration asserts that database-hosting expenses are typically passed along to clients, *see* ECF No. 191 ¶ 13, but the record does not explain how Winthrop determined to bill its client $60 per month. No record evidence permits a determination that this cost arose specifically from this case versus normal office overhead that a firm of Winthrop's size and sophistication regularly incurs. *See* ECF No. 199 at 11.

\*

The Chamber will be allowed to seek fees incurred in making this motion. The Board did not oppose this request, and "fees on fees" are "generally compensable," though they "should not be excessive." *Rosen v. Wentworth*, 13 F. Supp. 3d 944, 953 (D. Minn. 2014) (quoting *El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010)). Judgment will be entered awarding the Chamber attorneys' fees and costs in one amount after the Chamber's follow-on motion is decided (or, if the subject of a stipulation, after the stipulation is filed and approved).

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.  Plaintiff Minnesota Chamber of Commerce's Motion for Fees and Expenses [ECF No. 188] is **GRANTED IN PART**.

2.  Plaintiff Minnesota Chamber of Commerce is awarded attorneys' fees in the amount of $706,855.75, expert fees in the amount of $80, and expenses in the amount of $97.90.

Dated:  July 18, 2025                                s/ Eric C. Tostrud
                                                                 Eric C. Tostrud
                                                                 United States District Court